**Howie Ray ROBINSON, Petitioner-Appellant,**

v.

**Henry WADE, Winfield Scott, Richard Mays and Bill Shaw, Respondents-Appellees.**

**No. 81–1344.**

United States Court of Appeals, Fifth Circuit.

Sept. 20, 1982.

As Modified Nov. 19, 1982.

Edward W. Gray, Dallas, Tex. (Court-Appointed), for petitioner-appellant.

J. Steven Bush, Asst. Dist. Atty., Dallas, Tex., for respondents-appellees.

Before WISDOM, JOHNSON and WILLIAMS, Circuit Judges.

JOHNSON, Circuit Judge:

Howie Ray Robinson, three times convicted and sentenced to death for the murder of William Moon and three times granted a new trial, has asked this Court to order his release from the custody of the State of Texas on the ground that the State's planned fourth prosecution of him is barred by the federal Constitution. The district court found that Robinson's reprosecution would not offend the double jeopardy clause and that his other claims were not properly before it. This Court is of like mind with the district court and affirms its denial of relief.

## I.

### A.

In the early hours of September 28, 1973, Robinson killed convenience store attendant William Moon with a single shot to the head. At trial, Robinson admitted the killing, but claimed that he shot in self-defense. Robinson, describing the course of events leading up to Moon's death, testified that he and Ernest Benjamin Smith entered the all-night grocery while their companion, George Holden, remained in the car. Robinson denied that he planned to rob the store, saying that he only wanted to buy some food; he stated, however, that he then believed Smith to be entertaining thoughts of robbery. Robinson testified that he walked to the back of the store and selected some items for purchase, then turned to approach the checkout counter. As he turned, he saw Smith and Moon facing each other with guns drawn. Smith saw him approach, shouted a warning to him and dropped behind a counter. Moon swung around and took aim at him; Robinson drew his gun and fired the fatal shot into Moon's head. He and Smith then ran to the car and, while Smith told Holden what had happened, they made good their escape.

Robinson turned himself in to the police in late October 1973. He was indicted for capital murder shortly thereafter and tried

in June 1974. The jury returned a verdict finding Robinson guilty as charged and dictating that the penalty be assessed at death.[1] In April 1977, the Texas Court of Criminal Appeals reversed Robinson's conviction, holding that the trial court had erred in allowing the State to bolster the credibility of State's witness Holden's testimony by showing that he had passed a polygraph examination. *Robinson v. State*, 550 S.W.2d 54 (Tex.Crim.App.1977).

Robinson was retried in the summer of 1977. The second trial resulted in a second sentence of death; that verdict was subsequently set aside with the trial court's granting of Robinson's motion for a new trial. The trial court's reasons for granting Robinson's motion for new trial were not articulated, *see* Vernon's Ann.C.C.P. art. 40.07 (1979) (prohibiting comment on the evidence in rulings on new trial motions). Our independent examination of Robinson's motion and the testimony adduced at the hearing on that motion discloses that the court's inquiry focused on Robinson's allegation that one or more jurors had considered, despite the court's instructions to the contrary, the prosecutor's suggestions that Robinson's testimony as to the circumstances of the slaying differed from that given by co-defendant Smith at Smith's separate trial, and from that given by Robinson to Dr. James Grigson, a psychiatrist, in the course of a pre-trial competency examination.[2]

On April 3, 1978, the day his third trial began, Robinson entered a Special

---

**1.** Robinson was charged under V.T.C.A., Penal Code § 19.03 (1974) providing:

> *Capital Murder*
>
> (a) A person commits an offense if he commits murder as defined under Section 19.-02(a)(1) of this code and:
>
> (1) the person murders a peace officer or fireman who is acting in the lawful discharge of an official duty and who the person knows is a peace officer or fireman;
>
> (2) the person intentionally commits the murder in the course of committing or attempting to commit kidnapping, burglary, robbery, aggravated rape, or arson;
>
> (3) the person commits the murder for remuneration or the promise of remuneration or employs another to commit the murder for remuneration or the promise of remuneration;
>
> (4) the person commits the murder while escaping or attempting to escape from a penal institution; or
>
> (5) the person, while incarcerated in a penal institution, murders another who is employed in the operation of the penal institution.
>
> (b) An offense under this section is a capital felony.
>
> (c) If the jury does not find beyond a reasonable doubt that the defendant is guilty of an offense under this section, he may be convicted of murder or of any other lesser included offense.

V.T.C.A. Penal Code § 19.02(a)(1) (1974) provides:

> *Murder*
>
> (a) A person commits an offense if he:
>
> (1) intentionally or knowingly causes the death of an individual.

Under Texas law, the penalties for capital murder are life imprisonment or death. V.T.C.A., Penal Code § 12.31 (1974). The death penalty is imposed if the jury returns affirmative answers to special issues asking:

> (1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;
>
> (2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and
>
> (3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

Vernon's Ann.C.C.P. art. 37.071(b) (1981).

**2.** Robinson charged that the prosecutor's attempted comparison of his version of the events leading up to Moon's death with Smith's testimony violated the hearsay rule and the confrontation clause of the sixth amendment. His objection to the prosecutor's reference to his conversation with Dr. Grigson was rooted in the prohibition of Vernon's Ann.C.C.P. art. 46.02, § 3(g) (1979), against the use of such statements in determination of guilt.

Evidence offered at the hearing on Robinson's motion indicated that several jurors found themselves unable to disregard the implications emanating from the prosecutor's questions that Robinson had at other times told a different story. The doubts those questions induced were said to have contributed to their discreditation of Robinson's claim that he acted in self-defense, to the return of a finding of guilt, and to the recommendation of a penalty of death.

Plea[3] asking that his reprosecution, or at least resentencing to death, be found barred by article I, section 14 of the Texas Constitution[4] and the fifth, eighth, and fourteenth amendments of the federal Constitution.[5] The Plea was denied, the jury proceeded to judgment, and on May 13, 1978, Robinson was for the third time convicted and sentenced to death. The court denied Robinson's original motion for new trial based on charges of juror selection errors, erroneous evidentiary rulings, and insufficiency of the evidence. In May 1980, it granted Robinson's second motion: the court reporter had lost part of her notes and was unable to prepare a complete trial transcript for appellate review.

In early 1981, the district attorney informed Robinson that a fourth prosecution was imminent. Robinson responded with institution of this action in the federal district court.

## B.

▮ Robinson's pro se complaint framed this action under the Civil Rights Act of 1871, 42 U.S.C. § 1983. Charging that the prosecutorial and judicial errors which provoked his retrials evidenced a malicious purpose to deprive him of a fair trial, Robinson asked that his reprosecution be enjoined and damages be assessed against the district attorney, the assistant district attorney, the state trial court judge, and the clerk of court who participated in his previous prosecutions. The district court construed his complaint as a petition in habeas corpus seeking relief from the threat of reprosecution under the proscriptions of the double jeopardy clause,[6] and ordered the state court criminal proceedings stayed pending consideration of that claim.[7] The

3. Texas law provides that a claim of former jeopardy may be raised at the inception of the prosecution under attack, but that the facts concerning the Special Plea are determined in the course of the trial on the merits, see Vernon's Ann.C.C.P. arts. 27.05 & 27.07 (1966 & Supp.1981). The Plea is a mechanism for avoidance of reconviction, not retrial. In its limited function, it falls short of the protections extended to criminal defendants by the double jeopardy clause of the fifth amendment, *Baker v. Metcalfe*, 633 F.2d 1198, 1200 n.3 (5th Cir.), *cert. denied*, 451 U.S. 974, 101 S.Ct. 2055, 68 L.Ed.2d 354 (1981), *citing Abney v. United States*, 431 U.S. 651, 661, 97 S.Ct. 2034, 2041, 52 L.Ed.2d 651 (1977), as applicable to the states through the fourteenth amendment, *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

4. Art. I § 14 of the Texas Constitution provides:
    No person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction.
    Vernon's Ann.Const. Art. 1 § 14 (1955).

5. Robinson argued that his third prosecution was barred by the double jeopardy clause of the fifth amendment, the cruel and unusual punishment clause of the eighth amendment and concepts of fundamental fairness under the due process clause of the fourteenth amendment.

6. The magistrate to whom the district court referred Robinson's complaint recommended

that the several claims for damages against the district attorney, the assistant district attorney, and the state trial court judge be dismissed under Fed.R.Civ.P. 12(b)(6) as barred by *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) and *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). He further concluded Robinson's charges against the clerk of court to be predicated on an erroneous attribution to the clerk of responsibility for the actions of the court reporter, and recommended the same disposition. The district court has taken no action on these recommendations. *See Tarter v. Hury*, 646 F.2d 1010 (5th Cir. 1981); *Slavin v. Curry*, 574 F.2d 1256, *modified in other aspects*, 583 F.2d 779 (5th Cir. 1978); *see also Williams v. Wood*, 612 F.2d 982 (5th Cir. 1980).

Robinson does not challenge the propriety of the district court's construction of his § 1983 claim as a petition in habeas corpus invoking the protections of the double jeopardy clause. Insofar as the gravamen of his complaint lies in the legality of his continued confinement, that construction was, of course, dictated under *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Keenan v. Bennett*, 613 F.2d 127 (5th Cir. 1980); *compare Fulford v. Klein*, 529 F.2d 377 (5th Cir. 1976), *aff'd en banc*, 550 F.2d 342 (1977).

7. The entry of a stay of the state criminal proceedings, indeed, the very maintenance of this habeas corpus action, raises obvious issues under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *See Kolski v. Watkins*, 544 F.2d 762, 766 (5th Cir. 1977); *Jarvis v. Knowlton*, 459 F.Supp. 687 (N.D.Tex.1978),

court appointed counsel to represent him and referred the matter to a magistrate for further proceedings.

■ The State joined the double jeopardy argument on the merits.[8]  On due consideration, the magistrate concluded that Robinson's reprosecution would not offend the double jeopardy clause and accordingly recommended that his petition be dismissed and the stay of the impending criminal prosecution be dissolved.  The magistrate's recommendations elicited two responses on Robinson's behalf.  Robinson himself, in a pro se response, challenged the magistrate's conclusion that the trial errors of which he complained neither individually nor collectively evidence the deliberate prosecutorial attempts to provoke a mistrial requisite to constitutional preclusion of reprosecution.  His attorney, taking an approach not evidenced in Robinson's original federal court petition, challenged the course of the state proceedings as violative of Robinson's right to a speedy trial, and argued the threat of a fourth prosecution in and of itself to constitute cruel and unusual punishment.

The district court endorsed the magistrate's resolution of Robinson's double jeop-

---

*reversed on other grounds*, 620 F.2d 298 (5th Cir. 1980).  But where state remedies are inadequate, *see* note 3, *supra* note 8, *infra*, *Younger* is no obstacle to the issuance of a writ of habeas corpus in favor of a state prisoner whose custody offends the double jeopardy clause.  *Baker* at 1200 n.3; *Jackson v. Justices of Superior Court of Massachusetts*, 549 F.2d 215, 219 (1st Cir. 1977); *Drayton v. Hayes*, 589 F.2d 117 (2d Cir. 1979); *United States ex rel. Webb v. Court of Common Pleas*, 516 F.2d 1034, 1039 n.18 (3d Cir. 1975); *Gully v. Kunzman*, 592 F.2d 283 (6th Cir. 1979); *see Swisher v. Brady*, 438 U.S. 204, 213, n.11, 98 S.Ct. 2699, 2705 n.11, 57 L.Ed.2d 705 (1978); *Mincey v. Arizona*, 434 U.S. 1343, 1344, 98 S.Ct. 23, 24, 54 L.Ed.2d 56 (1978) (Rehnquist, J., Circuit Justice).  A preliminary injunction staying the allegedly offending state court proceedings pending completion of the habeas corpus proceedings should nonetheless not issue unless the district court is satisfied that there is

(1) [A] substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest.

*Wilson v. Thompson*, 593 F.2d 1375, 1384 (5th Cir. 1979) *quoting Canal Authority v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974); *compare Fitzgerald v. Peek*, 636 F.2d 943, 944 (5th Cir. 1981); *Kolski* at 766.

8.  Robinson's petition is properly considered to arise under 28 U.S.C. § 2241(c)(3), allowing the writ of habeas corpus to petitioners "in custody in violation of the Constitution," rather than under 28 U.S.C. § 2254(a), which requires that custody be "pursuant to the judgment of a state court."  Although section 2241 contains no statutory requirement of exhaustion like that found in section 2254(b), exhaustion of state remedies has been held a necessary prelude to its invocation.  *Fain v. Duff*, 488 F.2d 218, 223 (5th Cir.), *cert. denied*, 421 U.S. 999, 95 S.Ct. 2396, 44 L.Ed.2d 666 (1975); *Ex parte Royall*, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886).

Because the double jeopardy clause protects against multiple prosecutions, as well as multiple convictions and punishments, *see* n.3 *supra*, its infringement cannot adequately be remedied by post-conviction review, *Fain* at 224.  Determination of whether the exhaustion requirement has been satisfied focuses, then, on state avenues to relief available to the petitioner prior to commencement of the criminal proceedings.

The State's response, made through the trial court judge who had presided at Robinson's three previous trials and in whose constructive custody Robinson is held pending retrial, addressed pre-trial avenues to relief.  The trial judge noted that he had, by denial of the Special Plea of former jeopardy offered at the inception of the third trial, *see* note 3 and accompanying text, *supra*, considered and rejected Robinson's claim that the prosecutorial and judicial errors precipitating his first two retrials precluded his reprosecution.  He further stated his belief that the loss of the court reporter's notes which had prompted vacation of Robinson's third conviction neither alone nor in combination with preceding events barred a fourth prosecution.  Recourse to the Special Plea, by design inadequate to safeguard the constitutional right asserted, *id.*, is doubly unnecessary when its invocation is demonstrably futile.  *Smith v. Estelle*, 562 F.2d 1006 (5th Cir. 1977).

ardy claim, declined consideration of the claims newly raised under the sixth and eighth amendments, and denied relief.[9] Robinson appeals.

## II.

Robinson urges this Court to find his fourth prosecution precluded by the double jeopardy clause, barred for lengthy delays violative of both his right to a speedy trial and general precepts of fundamental fairness, and prohibited as itself cruel and unusual punishment. The latter three claims are not properly before this Court and cannot at this time be considered.

Robinson's initial presentation of his speedy trial and eighth amendment claims was made directly to the district court, after the magistrate had completed consideration of the merits of the habeas corpus petition and submitted to the court his recommended findings and conclusions. The district court refused to entertain these claims and dismissed them without prejudice.

■ In habeas corpus proceedings, as in other civil proceedings, claims can be added after filing of the pleadings only by amendment;[10] under Fed.R.Civ.P. 15,

amendment can be made after responsive pleadings have been filed "only by leave of the court or by written consent of the adverse party."[11] Grant or denial of leave to amend is within the discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *Dunn v. Koehring Co.*, 546 F.2d 1193 (5th Cir. 1977).

■ Though vigorously pressing these claims on their merits, Robinson has not argued that the district court erred in denying their consideration. Nor can we find its decision an abuse of discretion. The claims were filed at a very late stage of proceedings in the district court; moreover, there is no showing that the claims had been exhausted in the state courts, *see Brown v. Estelle*, 530 F.2d 1280 (5th Cir. 1976).

These claims stand in the same posture as Robinson's entirely new argument that the delays encountered in his prosecution are "fundamentally unfair." Never a part of the proceedings in the district court, they are no part of the proceedings on appeal. *Cobb v. Wainwright*, 666 F.2d 966 (5th Cir. 1982); *Miller v. Turner*, 658 F.2d 348 (5th Cir. 1981); *Mayberry v. Davis*, 608 F.2d 1070 (5th Cir. 1979).[12]

---

**9.** The district court also dissolved its stay of Robinson's impending reprosecution. By its order of September 21, 1981, this Court has stayed further state court action on this matter pending resolution of Robinson's appeal.

**10.** Subject to certain exceptions, such as effective amendment by consensual trial of matters not pleaded, Fed.R.Civ.P. 15(b), not applicable here.

**11.** The Federal Rules of Civil Procedure govern amendments of petitions for habeas corpus. 28 U.S.C. § 2242; *Hodges v. Rose*, 570 F.2d 643 (6th Cir.), *cert. denied*, 436 U.S. 909, 98 S.Ct. 2243, 56 L.Ed.2d 408 (1980); *Blake v. Zant*, 513 F.Supp. 772 (S.D.Ga.1981).

It is of no significance that Robinson presented his new claims in the guise of "Objections to the Recommendation of the Magistrate." At-

tempts to raise new claims are governed by the rules of amendment, without regard to the characterization given the claims by the petitioner. *See, e.g., Sturm v. Wilson*, 373 F.2d 548 (9th Cir. 1967) (treating a motion for rehearing as a motion to amend); *United States ex rel. Durocher v. La Vallee*, 330 F.2d 303 (2d Cir. 1964) (en banc), *cert. denied*, 377 U.S. 998, 84 S.Ct. 1921, 12 L.Ed.2d 1048 (1964) (treating new allegations raised in an application for certificate of probable cause as presented by a motion to amend).

**12.** Because we do not consider the unexhausted issues which Robinson would inject on appeal as a part of the petition properly before us, and because there is no state procedure adequate to protect the single interest properly raised, we are not confronted by a "mixed" petition. *Mill-*

## III.

We begin, then, consideration of the single claim properly before us. Robinson charges that by its misconduct in the course of his prior trials, the State of Texas has triggered the preclusive effects of the double jeopardy clause. He seeks a ruling that his reprosecution is wholly barred; failing that, he asks that the State be restricted to a demand that he be punished by life imprisonment. The separate aspects of Robinson's double jeopardy claim will be taken up in turn.

## A.

## 1.

The contours of the double jeopardy clause [13] are not easily delineated. A welter of cases, venerable and recent, have sought the application of its command; [14] their proliferation is itself testimony to the difficulties encountered in development of a cohesive jurisprudence of preclusion.[15] The dynamic process has, perhaps inevitably, spawned uncertainty over aspects once thought settled. The theory of preclusion pressed by Robinson has not gone unaffected by the instabilities inhering in this course of evolution. Developments have, in one sense, quelled disharmony: the bounds of prosecutorial misconduct giving rise to protection against reprosecution have recently been given authoritative definition more exacting than that which in some quarters had been accorded. But unresolved by that redefinition are doubts, attributable in large part to pronouncements in a related branch of double jeopardy law, to the very applicability of this theory in circumstances such as are here presented.

er at 350 n.1, *citing Mayberry* at 1072 n.3; *see Rose v. Lundy,* —— U.S. ——, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Galtieri v. Wainwright,* 582 F.2d 348 (5th Cir. 1978) (en banc).

**13.** "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ." U.S.Const.Amend. 5.

**14.** *See United States v. Di Francesco,* 449 U.S. 117, 126–31, 101 S.Ct. 426, 431–34, 66 L.Ed.2d 328 (1980), extracting from 30-odd cases comprising the landmarks and significant refinements of double jeopardy jurisprudence the few "essentially settled," *id.* 101 S.Ct. at 431, principles of double jeopardy law.

**15.** Interpretation of the clause has hardly followed an unerring course. *See, e.g., United States v. Scott,* 437 U.S. 82, 86, 98 S.Ct. 2187, 2191, 57 L.Ed.2d 65 (1978) *overruling United States v. Jenkins,* 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975); *Burks v. United States,* 431 U.S. 1, 11–18, 98 S.Ct. 2141, 2147–50, 57 L.Ed.2d 1 (1978), *overruling in part Bryan v. United States,* 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335 (1950) *and progeny; United States v. Jorn,* 400 U.S. 470, 480–84, 91 S.Ct. 547, 555–56, 27 L.Ed.2d 543 (1971), *limiting Gori v. United States,* 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961). Changes in direction attributed to the insight accruing on "vastly increased exposure to the various facets of the Double Jeopardy Clause," *Scott* 101 S.Ct. at 2191, appear to reflect shifting perceptions of the proper accommodation between the defendant's interest in avoiding repeated exposure to the "hazards of trial and possible conviction," *Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957) and the Government's interest in securing a determination on issues of guilt or innocence. *Di Francesco* 101 S.Ct. at 433–34; *Scott* 98 S.Ct. at 2196–98; *United States v. Wilson,* 420 U.S. 332, 352, 95 S.Ct. 1013, 1026, 43 L.Ed.2d 232 (1975). Strong support remains for the preclusion of reprosecution where the defendant has in fact or in effect won an acquittal on the merits, *Bullington v. Missouri,* 451 U.S. 430, 444–46, 101 S.Ct. 1852, 1861–62, 68 L.Ed.2d 270 (1981); *Burks* 98 S.Ct. at 2149–50; *United States v. Ball,* 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896); *compare Tibbs v. Florida,* —— U.S. ——, —— —— ——, 102 S.Ct. 2211, 2218–19, 72 L.Ed.2d 652 (1982); *Di Francesco,* 101 S.Ct. at 435; *Swisher,* 98 S.Ct. at 2706–08 (1978); *Scott* 98 S.Ct. at 2196–97. But the right to be spared multiple prosecutions has been accorded considerably lesser force where the earlier proceedings were terminated by a ruling on grounds independent of guilt or innocence, *Scott,* 98 S.Ct. at 2192, or where they have been found to be tainted by error, causing dismissal of the indictment, *Lee v. United States,* 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977), declaration of mistrial, *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *compare Jorn* 91 S.Ct. at 557, or reversal on appeal, *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), or where a conviction supported by legally sufficient evidence is reversed for doubts as to the adequacy of the weight of the evidence, *Tibbs,* 102 S.Ct. at 2219. The interest asserted by Robinson, in essence a charge that he was deprived a fair opportunity to win acquittal by purposeful and prejudicial prosecutorial misconduct, falls neatly into neither category. *See* discussion, *infra.*

■ In a decision rendered while Robinson's appeal was under our consideration, the Supreme Court reaffirmed that prosecutorial overreaching may indeed trigger the preclusive effects of the double jeopardy clause. But *Oregon v. Kennedy,* ── U.S. ──, 102 S.Ct. 2083, 72 L.Ed.2d 416, (1982) also works significant modifications on the doctrine: the scope of its application was limited by a close identification of the nature of the conduct from which it could arise. The Court held that "a defendant may invoke the bar of double jeopardy in a second effort to retry him [where] ... the conduct giving rise to the successful motion from a mistrial was *intended to provoke* the defendant into moving for a mistrial," *Kennedy,* 102 S.Ct. at 2091 (emphasis added). In so defining prosecutorial overreaching, the *Kennedy* Court repudiated the broader implications of certain language in its earlier cases dealing with the prosecutorial overreaching exception [16] which had led other courts to premise preclusion on lesser degrees of culpability in the prosecutor, or to focus on the severity of the prejudice worked to the fair trial rights of the accused.[17] Availability of the doctrine is now clearly conditioned on a finding that the prosecutor intended "to subvert the protections afforded by the Double Jeopardy Clause [by] 'goad[ing]' the defendant into

moving for a mistrial," *Kennedy* 102 S.Ct. at 2089.

But *Kennedy*'s consideration of the preclusive effects of prosecutorial overreaching, like all prior circumstances of that doctrine consideration in the Supreme Court, occurred in a situation of the premature termination of the original proceeding, *see Kennedy* 102 S.Ct. at 2087–88; *Lee* 97 S.Ct. at 2147 (dismissal of defective information); *Dinitz* 96 S.Ct. at 1079 (mistrial); *Jorn* 91 S.Ct. at 555, 557 (mistrial); *United States v. Tateo,* 377 U.S. 463, 468 n.3, 84 S.Ct. 1587, 1590 n.3, 12 L.Ed.2d 448 (guilty plea); *Downum* 83 S.Ct. at 1034 (mistrial); *Gori* 81 S.Ct. at 1526–27 (mistrial). Whether the exception extends to situations where, as here, earlier prosecutions culminated in jury verdicts only to be set aside by reversal or orders of new trials is a matter of some doubt.

The uncertainty, first noted by this Court in *United States v. Opager,* 616 F.2d 231 (5th Cir. 1980), has its roots in certain language employed by the Supreme Court in an explanation of its holdings on the functions of the double jeopardy clause in the context of reprosecution following reversals on appeal. That Court in dicta has characterized its leading case in the area to hold that "the successful appeal of a judgment

16. Specifically cited as a possible source of what the Court characterized as "justifiable confusion," *Kennedy* 102 S.Ct. at 2088, was its earlier explanation of the exception as arising where "bad-faith conduct by judge or prosecutor ... threatens the '[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' the defendant," *Kennedy* 102 S.Ct. at 2091, *citing Dinitz* 96 S.Ct. at 1081, *citing Jorn* 91 S.Ct. at 557, *Downum v. United States,* 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100 (1963); *Gori* 81 S.Ct. at 1526–27. The Court criticized the language of "bad faith conduct" or "harassment" as "general standards ... which offer virtually no standards for their application. Every act on the part of a rational prosecutor during a trial is designed to "prejudice the defendant" by placing before the judge or jury evidence leading to a finding of his guilt, *Kennedy* 102 S.Ct. at 2089. It opted for the "intent of the prosecutor" standard as "a manageable standard to apply," *id.*

17. This Court has previously stated that the exception may be premised on "gross negligence ... [of a prosecutor] which 'seriously prejudice[s] a defendant' causing him to 'reasonably conclude a continuation of the tainted proceeding would result in a conviction,'" *United States v. Kessler,* 530 F.2d 1246, 1256 (5th Cir. 1976). The Oregon Court of Appeals which granted Kennedy's motion to bar his second prosecution for double jeopardy apparently looked primarily to the degree of prejudice caused by the prosecutor's conduct, *Kennedy* 102 S.Ct. at 2086–87. Other courts have employed a range of variations on these themes. *See, e.g., United States v. Roberts,* 640 F.2d 225, 227–28 (9th Cir. 1981); *Mitchell v. Smith,* 633 F.2d 1009, 1011 (2d Cir. 1980); *United States v. Zozlio,* 617 F.2d 314, 315 (1st Cir. 1980); *United States v. Medina-Herrera,* 606 F.2d 770, 775–76 (7th Cir. 1979), *cert. denied,* 446 U.S. 964, 100 S.Ct. 2939, 64 L.Ed.2d 822 (1980); *United States v. Rumpf,* 576 F.2d 818, 822–23 (10th Cir. 1978); *United States v. Martin,* 561 F.2d 135, 138–40 (8th Cir. 1977).

of conviction, on *any ground other* than the insufficiency of the evidence to support the verdict, *Burks v. United States*, [437 U.S. 1] 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), poses no bar to further prosecution on the same charge," *Scott* 98 S.Ct. at 2193 (emphasis added); *Di Francesco* 101 S.Ct. at 434. The problem arises in that *Scott*'s unequivocal statement could be read to indicate that retrial is not precluded where a verdict of conviction was rendered but reversed for prosecutorial overreaching on appeal. By implication, *Scott*'s statement makes questionable preclusion where judgment of conviction was returned by the jury, but was set aside on grounds of overreaching by the trial court.

But that *Scott*'s unyielding characterization of the limited interaction of the double jeopardy clause with prosecutions following reversals may admit too much becomes apparent on examination of *Kennedy*, and on appreciation of the rationale of *Burks* itself. Dissension among members of the *Kennedy* court over the soundness of the rule there announced in part focused on this very question of the applicability of the double jeopardy bar to reprosecution where overreaching is first acknowledged by reversal on appeal. Justices concurring in the judgment termed "irrational" the assumption they believe to have been made by the majority that "an appellate court that concluded not only that the defendants' mistrial motion should have been granted, but also that the prosecutor intended to provoke a mistrial would not be obligated to bar

reprosecution as well as reverse the conviction," *Kennedy* 102 S.Ct. at 2095–96 n.22. In response, the majority did not deny that were that result to obtain upon application of the narrow, intent-based rule it adopted, the allegation of irrationality would be "persuasive," *Kennedy* 102 S.Ct. at 2090 n.7.[18] Rather, it explained the *Burks*-based observation eliciting this criticism to have been made in examination of the possible effects of the "amorphous" standard advocated by the concurrence, and emphasized that it viewed this possible effect as a reason for rejection of that standard.[19] *Id.* The response is strong indication of the strength of the criticism, and of the unjustness of definition of preclusive effect simply by the point in the judicial process at which a charge of overreaching is found meritorious.

Nor is the rationale of *Burks* inconsistent with application of the "prosecutorial overreaching" exception to bar retrial where the overreaching caused a tainted verdict to be set aside, rather than a tainted proceeding to be aborted. *Burks'* holding, resting on a perceived dichotomy between reversals for trial error and reversals for evidentiary insufficiency, indicated that, as the former hold no implication for the guilt or innocence of the defendant, they would raise no bar to further prosecution. *Burks* 98 S.Ct. at 2149. That distinction does not necessarily hold true where trial error is attributable to intentional prosecutorial overreaching. The extreme tactics which con-

**18.** "Justice Stevens' concurring opinion criticizes the suggestion that the broader rule he espouses would make it less likely the judges would grant a motion for mistrial than if the narrower rule prevailed. At 2095 n.22. Justice Stevens' criticism of our conclusion appears to be based on the erroneous assumption that the courts in such a situation would be applying the narrow rule, rather than the broad rule. Tested by the correct assumption that the courts would be applying the all-encompassing standard denominated 'overreaching,' which he espouses, at 2097, we do not find his criticisms persuasive," *Kennedy* 102 S.Ct. at 2090 n.7.

**19.** This section of the Court's opinion, 102 S.Ct. at 2090 n.6 & n.7 and related text, is admittedly not susceptible of easy understanding. It may fairly be read, however, to express a concern

that should an "amorphous" standard, not easily applied, be adopted, trial courts fearful of double jeopardy repercussions would deny meritorious motions for mistrials based on prosecutorial error not amounting to overreaching. In such circumstances, appellate reversal for that error would not preclude reprosecution; the defendant would thus have been subjected to unnecessary completion of the first trial, and the appellate process resulting in remand. The majority's stated expectation that the problem would in any case not likely arise, because appellate judges would defer to the judgment of trial court judges who are "on the scene" does not, of course, dispense with situations where even with all deference the appellate court would differ.

stitute prosecutorial overreaching offend the double jeopardy clause at least in part because they unfairly deprive the defendant of possible acquittal, by heightening, in a manner condemned by law, the jury's perception of the defendant's guilt, *see Kennedy* 102 S.Ct. at 2096–97 (Stevens, J., concurring in the judgment).[20] Whether the tactic condemned is successful in its objective of securing a mistrial, or unsuccessful, but causes the return of a verdict of conviction, would seem to be of little significance in development of a law of preclusion designed to protect this interest. *Id.; Opager* at 235–36; *Medina-Herrera* at 775; *United States v. Heymann*, 586 F.2d 1039 (5th Cir. 1978).

Neither *Burks* nor subsequent cases imply diminution of the significance attached to the interest protected by the prosecutorial overreaching exception. In its recent decision of *Tibbs*, the Court explained that

Burks ... implement[s] the principle that "[t]he Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." *Burks, supra* [431 U.S.] at 11 [98 S.Ct. at 2147]. This prohibition, lying at the core of the Clause's protections, prevents the State from honing its trial strategies and perfecting its evidence through successive attempts at conviction. Repeated prosecutorial sallies would unfairly burden the defendant and create a risk of conviction through sheer governmental perseverance.

*Tibbs* 102 S.Ct. at 2218. In *Di Francesco*, the Court noted with approval *Burks'* recognition that "central to the objective of the prohibition against successive trials" is the barrier to "affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding," *Burks* 98 S.Ct. at 2147, and commented further that "[i]mplicit in this is the thought that if the Government may reprosecute, it gains an advantage from what it learns at the first trial about the strengths of the defendant and the weakness of its own," *Di Francesco* 101 S.Ct. at 432–33. And the Court the same term it decided *Burks* elsewhere reaffirmed that "[t]he Double Jeopardy Clause also precludes the prosecutor from enhancing the risk that an innocent defendant may be convicted by taking the question of guilt to a series of persons or groups empowered to make binding determinations," *Swisher* 98 S.Ct. at 2706, *citing Arizona v. Washington*, 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717 (1978). The interest in denying the Government "that forbidden second crack," *id.*, would seem equally to be infringed by oppressive prosecutorial tactics designed to avoid acquittal as by retrial following acquittal for insufficiency of evidence.[21]

The problem is nonetheless not one susceptible of easy resolution, *see Opager* at 236; *United States v. Roberts*, 640 F.2d 225, 230–31 (9th Cir.) (dissenting opinion), *cert. denied*, 452 U.S. 942, 101 S.Ct. 3088, 69 L.Ed.2d 957 (1981); *compare Medina-Herrera*, 606 F.2d at 775 (applying the "prosecu-

---

**20.** Moreover, the defendant's valued right to go to a particular tribunal, *Jorn* 91 S.Ct. at 557, involved in cases where the proceedings are not completed, is equally implicated where a motion for mistrial is denied, but the subsequent jury verdict is set aside for prosecutorial overreaching. In both cases "the defendant's valued right to complete his trial before the first jury would be a hollow shell if the inevitable motion for mistrial were held to prevent a later invocation of the bar of double jeopardy in all circumstances," *Kennedy* 102 S.Ct. at 2088.

**21.** The Supreme Court repeatedly has eschewed distinctions in the scope of protection afforded by the double jeopardy clause grounded wholly on temporal or technical considerations. *See Jeffers v. United States*, 432 U.S. 137, 152 n.20, 97 S.Ct. 2207, 2217 n.20, 53 L.Ed.2d 168 (1977) (the Government may not avoid the prohibition on prosecution for greater and lesser offenses by seeking separate trials rather than a joint proceeding); *Lee* 97 S.Ct. at 2144–45 (finding no significance in characterization of an order as a "dismissal" rather than a "declaration of mistrial"); *Tateo*, 84 S.Ct. at 1589–90 (finding no sensible basis for differentiation with regard to retrial between orders granting new trials and mistrials).

torial overreaching" exception in the instance of an order granting a new trial). A definitive answer need not be given to resolve Robinson's claims.

### 2.

Though uncertainty reigns elsewhere, the principles governing examination of a claim of prosecutorial overreaching are in the wake of *Kennedy* clear. Double jeopardy will bar reprosecution only if analysis of objective facts and circumstances, *Kennedy* 102 S.Ct. at 2089, shows that the conduct in question was "intended to provoke a motion for mistrial," *Kennedy* 102 S.Ct. at 2091. A finding that the Government's acts do not amount to intentional misconduct is a finding of fact, *Kennedy* 102 S.Ct. at 2089; as such, it will not be set aside unless shown to have been clearly erroneous, *United States v. Charette*, 625 F.2d 57, 58 (5th Cir. 1980). And only if overreaching is found will inquiry into whether the defendant suffered prejudice be made, *United States v. Westoff*, 653 F.2d 1047, 1050 (5th Cir. 1981).

The district court found that the misconduct assigned by Robinson, while basis for grant of a new trial,[22] did not constitute overreaching preclusive of retrial. On the record before us we cannot say that the district court clearly erred. The prosecutor's conduct in Robinson's first trial is attributable at least in part to an evidentiary ruling not wholly without support in Texas law, *see Robinson*, 550 S.W.2d at 59, 60.

His conduct in the second trial reached the limits of the trial court's rulings, and stretched the limits of propriety. It cannot be condoned. Nonetheless, the prosecutor's arguments for pursuing the several lines of inquiry in question, while weak, are not so wholly lacking in merit as to be termed frivolous,[23] *Opager* at 237. Hard blows, intended to improve the chances of obtaining a conviction, do not demand the remedy designed for foul ones intended to provoke a retrial. *United States v. Fine*, 644 F.2d 1018, 1023 (5th Cir. 1981), *cert. denied*, 454 U.S. 1097, 102 S.Ct. 669, 70 L.Ed.2d 638 (1982).

Nor does the court reporter's inability to prepare a complete transcript of the third trial trigger preclusion of retrial. The loss was at worst negligent; simple negligence will not support invocation of the double jeopardy clause. *Westoff* at 1050, *citing Illinois v. Summerville*, 410 U.S. 453, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973).

On the facts here presented there occurred no prosecutorial overreaching sufficient to bar Robinson's retrial. His plea of preclusion under the double jeopardy clause must be denied.

### B.

Robinson urges that even if his retrial is not barred the State should be precluded from again seeking the death penalty. His argument finds no quarter in the double jeopardy clause.

---

**22.** *See Smith v. Phillips*, 455 U.S. 209, 218, 102 S.Ct. 940, 947, 71 L.Ed.2d 78 (1982), holding that the due process clause of the fourteenth amendment requires a new trial be granted when it has been determined that the jury was prejudiced by trial error, without regard to the culpability of the prosecutor; *compare United States v. Berger*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), holding a new trial to be the proper remedy for deliberate, persistent misconduct in the prosecution of a weak case calculated to mislead the jury; no consideration of double jeopardy aspects.

**23.** The court's ruling on defense counsel's objection to the prosecutor's inquiry into Robinson's knowledge of co-defendant Smith's "position" allowed limited questioning regarding conversations between Robinson and Smith after the shooting. The prosecutor's subsequent questions pushed the line between such conversations and Smith's trial testimony, but did not cross it.

In explanation of his questions referring to Robinson's statements to Dr. Grigson in the course of the competency examination, the prosecutor stated his belief that such statements, though inadmissible on *issues* of guilt, were admissible in the guilt *phase* as impeachment. Strained though it may be, the argument was not beyond the pale. Definitive rejection of it came two years later, in *Caballero v. State*, 587 S.W.2d 741 (Tex.Crim.App.1979) (en banc).

■ Supreme Court cases examining the import of the double jeopardy clause in sentencing determinations have found it to be most restricted. Double jeopardy considerations do not prohibit imposition of a harsher sentence upon retrial than that pronounced upon the original conviction, *Pearce*, 89 S.Ct. at 2079;[24] *compare Ralston v. Robinson*, 454 U.S. 201, 231 n.14, 102 S.Ct. 233, 245 n.14, 70 L.Ed.2d 345 (1982). Nor does the clause prohibit the Government's appeal of a sentence it finds too lenient, *Di Francesco* 101 S.Ct. at 438. The sole exception to these principles to date recognized by the Court is the preclusion of attempts to obtain the death penalty where a jury, asked in a separate sentencing proceeding resembling a trial on guilt to determine whether aggravated circumstances have been proved beyond a reasonable doubt, has returned a lesser sentence. *Bullington* 101 S.Ct. at 1862. The Court's approach bears a strong resemblance to concepts of issue preclusion; absent "acquittal" on issues setting the necessary and independent factual predicate for imposition of a certain sentence, sentencing determinations are unrestrained by the double jeopardy clause.[25]

■ Robinson advances a claim distinct from those entertained in Supreme Court precedent: he argues that the double jeop-

ardy clause demands that a circumstance of repetitive proceedings exact a toll on the Government's latitude in punishment.[26] We find no support in the double jeopardy clause for such a balance of burdens. Its interference with issues of sentencing is minimal; where the result sought is not avoidance of a harsher sentence but governmental restriction to a lesser one than previously imposed, its principles are of no effect.

## IV.

The district court's denial of habeas corpus relief is in all aspects affirmed. The stay of state court proceedings ordered by this Court shall be dissolved upon issuance of the mandate.

AFFIRMED.

---

**24.** The Court did find the due process clause of the fourteenth amendment to prohibit imposition of a harsher sentence if in retaliation for the exercise of the right to attack the conviction, *id.* 89 S.Ct. at 2080. We express no opinion as to whether or in what circumstances the result Robinson seeks may find support in the due process clause.

**25.** That approach is consistent with the deference accorded legislative definitions of punishment, *see, e.g., Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980); *Busic v. United States*, 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980); *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

**26.** Robinson has represented that "[n]o where [sic] in the reported case decisions from State or Federal Courts does there appear a case in which a Defendant was subject to threat of death four times upon the same charge," Petitioner's Brief at 5. The situation is not entirely unprecedented. In *Hopt v. Utah*, 120 U.S. 430,

7 S.Ct. 614, 30 L.Ed. 708 (1887), the Court sustained a fourth conviction and sentence of death on a charge of first-degree murder, after reversing the three earlier convictions for trial error. No double jeopardy claim was entertained. *Carsey v. United States*, 392 F.2d 810 (D.C.Cir.1967) resulted in the dismissal of an indictment upon which a fourth murder conviction was predicated; the Court found that the trial court's declaration of a mistrial in the third proceeding over the defendant's objection was not a matter of "imperious necessity," *id.* at 811 *citing Downum* 83 S.Ct. at 1036, and that the double jeopardy clause consequently barred the fourth prosecution. And in *Beecher v. Baxley*, 549 F.2d 974 (5th Cir.), *cert. denied*, 434 U.S. 854, 98 S.Ct. 171, 54 L.Ed.2d 124 (1977), this Court found a fourth prosecution for murder not to reflect the bad faith or harassment necessary to warrant issuance of injunctive relief from further state proceedings.