# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued May 16, 2013          Decided July 5, 2013

No. 12-3070

UNITED STATES OF AMERICA,
APPELLEE

v.

WINSTON MCCALLUM,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cr-00234-1)

*Lisa B. Wright*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A.J. Kramer*, Federal Public Defender. *Tony Axam Jr.*, Assistant Federal Public Defender, entered an appearance.

*Kristina L. Ament*, Assistant U.S. Attorney, argued the cause for appellee. On the brief were *Ronald C. Machen*, *Jr.*, U.S. Attorney, and *Elizabeth Trosman*, *Chrisellen R. Kolb*, *Kenneth F. Whitted*, and *Kathryn L. Rakoczy*, Assistant U.S. Attorneys. *Elizabeth H. Danello*, Assistant U.S. Attorney, entered an appearance.

2

Before: HENDERSON and GRIFFITH, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* GINSBURG.

GINSBURG, *Senior Circuit Judge*:   After the prosecutor repeatedly failed to meet his disclosure obligations, Winston McCallum moved for and obtained a mistrial.  Shortly before retrial the prosecutor belatedly disclosed yet more information that McCallum had subpoenaed before the first trial.  Arguing that he would have seen the first trial through to a verdict but for the Government's latest disclosure violation, McCallum moved to dismiss the indictment under the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States.  The district court denied the motion because the prosecutor's misconduct was not intended to goad McCallum into seeking a mistrial.  We affirm that decision.

## I.  Background

Shortly after midnight on July 28, 2010, Officers Alfonso Matos and Ismael Chapa of the Metropolitan Police Department (MPD) noticed McCallum sitting in front of his apartment building.  According to Officer Matos's pre-trial testimony, McCallum was "leaning forward as if he was asleep or intoxicated."  The officers approached, but upon seeing them, Officer Matos testified, McCallum "got up and tried to run towards the door."  Officer Matos testified the officers caught McCallum and placed him in handcuffs, using "two handcuffs linked together" because McCallum "was a larger individual."  Officer Matos asked McCallum whether he had anything illegal and McCallum replied, according to the officer, "I got cocaine on me."  Officer Matos testified that McCallum then somehow moved his hands, which were

handcuffed behind his back, towards the front right pocket of his pants whereupon, improbable as it may seem, a "bag of cocaine fell out." The officers arrested McCallum and recovered more cocaine from his person.

Some months later a grand jury charged McCallum with unlawful possession with intent to distribute 28 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii), and with unlawful possession with intent to distribute 28 grams or more of cocaine base within 1,000 feet of a school, in violation of 21 U.S.C. § 860(a). As McCallum's case inched toward trial, the Government committed a series of disclosure violations leading to, and then extending beyond, the district court's declaration of a mistrial based upon such violations.

In February 2011 the district court held a hearing on McCallum's motion to suppress physical evidence and statements. After cross-examining Officer Matos, McCallum's counsel noticed a transcript of Matos's grand jury testimony on the prosecutor's desk; only then did the prosecutor provide the transcript to the defense. Because Officer Matos's testimony before the grand jury was potentially inconsistent with his testimony at the suppression hearing, the district court permitted McCallum to recall Officer Matos for further cross-examination. The district court granted McCallum's motion to suppress with respect to physical evidence recovered from a search of his apartment after his arrest, but denied McCallum's motion to suppress with respect to the drugs taken from his person at the time of arrest and the statements he made at the scene.

After the suppression hearing McCallum's counsel asked the prosecutor whether Officer Chapa's grand jury testimony contained exculpatory information. The prosecutor then

turned over a transcript of Officer Chapa's testimony. Because Officer Chapa's testimony before the grand jury was inconsistent with Officer Matos's testimony at the suppression hearing, the district granted McCallum's request to reopen the suppression hearing. The court thereafter reaffirmed its denial of McCallum's motion to suppress the drugs taken from his person and his statements at the scene.

Before trial McCallum subpoenaed from the MPD all documents pertaining to complaints against Officers Chapa and Matos. The prosecutor, reporting there were no complaints against Officer Chapa and only two traffic-related complaints against Officer Matos, moved to quash the subpoena. The district court, however, instructed him to inquire further with the MPD. Soon thereafter the prosecutor produced for the district court's in camera inspection written summaries of statements Officers Chapa and Matos had made to MPD Internal Affairs Bureau in response to McCallum's complaint about his arrest. The district court warned the prosecutor that the statements made by the officers were "probable Jencks [Act] material because ... the complaint filed by Mr. McCallum ... [was] about this very arrest that's the subject of this case." *See* 18 U.S.C. § 3500(b) (requiring the United States to produce, upon motion of the defendant, any relevant prior statement of a witness who has testified for the Government). Despite having promised to provide all Jencks Act material to the defense at least 10 days before trial, it was not until the morning trial was to begin that the Government gave defense counsel the summaries of the statements Officers Chapa and Matos had made to Internal Affairs, along with a "property book receipt" listing evidence recovered from the scene of the arrest.

At trial McCallum's counsel attempted to impeach Officer Matos with the summary of his statement to the

5

Internal Affairs Bureau. Officer Chapa testified that the summary did not accurately reflect his statement, which he said had been "audibly recorded." The prosecutor told the district court "[t]his is the first I've learned ... there was an audio recording made" but he obtained and gave the recording to the defense that evening. After listening to the recording, McCallum's counsel moved to strike the testimony of Officers Chapa and Matos or, in the alternative, for a mistrial. The district court held the Government's failure to give the recording to the defense prior to trial was "a violation under the Jencks Act" and therefore declared a mistrial, adding that the second trial would be fair because "[p]resumably all of the Jencks material, as well as any other [required disclosures under] *Brady*, *Giglio*, *Lewis* and so on, will have been finally produced."

The district court's presumption proved overly optimistic: Shortly before McCallum's second trial, the Government submitted 17 more complaints against Officers Chapa and Matos for in camera review by the district court. The court ordered three of those complaints disclosed to the defense because they included allegations that the officers had falsely accused other individuals of possessing drugs. *United States v. McCallum*, 885 F. Supp. 2d 105, 110 (D.D.C. 2012).

McCallum then moved to dismiss the indictment on the ground that his retrial would subject him to double jeopardy. McCallum claimed he would not have requested a mistrial had he been informed, as he should have been, of the complaints against Officers Chapa and Matos; accordingly, he argued, the district court should treat the case as if the mistrial had been declared not at the request of the defense but rather, at the request of the Government and "over the objection of the defense." The district court denied that motion; because McCallum had sought the mistrial, it held, double jeopardy

would bar his retrial only if "the prosecutor [had] goaded McCallum into requesting a mistrial." 885 F. Supp. 2d at 114 (citing *Oregon v. Kennedy*, 456 U.S. 667, 676 (1982)). On the contrary, the district court found, "the prosecutor's conduct was neither intentional nor intended to provoke a mistrial," and therefore McCallum lawfully could be retried. *Id.* at 115.

## II. Analysis

We have jurisdiction over this interlocutory appeal because "a pretrial order denying a motion to dismiss an indictment on double jeopardy grounds" comes within the collateral order doctrine and is therefore a "final decision" within the scope of 28 U.S.C. § 1291. *Abney v. United States*, 431 U.S. 651, 659 (1977); *see generally Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867–68 (1994). McCallum does not challenge the factual findings underlying the court's order, including the finding that the prosecutor's conduct was not intended to provoke a mistrial. McCallum argues only that the order violates his right under the Double Jeopardy Clause, a question of law, which we review de novo. *See United States v. Coughlin*, 610 F.3d 89, 96 (D.C. Cir. 2010).

The constitutional protection against double jeopardy comprises not only the defendant's right to be secure in a judgment of conviction or acquittal but also his "'valued right to have his trial *completed* by a particular tribunal.'" *Arizona v. Washington*, 434 U.S. 497, 503 (1978) (emphasis added) (quoting *Wade v. Hunter*, 336 U.S. 684, 689 (1949)). Although "retrial is not automatically barred when a criminal proceeding is terminated [prematurely] ..., the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar." *Id.* at 505. It follows that

when a mistrial is declared over the objection of the defendant, retrial is permissible only if declaring a mistrial is manifestly necessary and no fault of the prosecution. *Kennedy*, 456 U.S. at 672. "[T]he hung jury [is] the prototypical example of manifest necessity." *United States v. Glover*, 731 F.2d 41, 46 (D.C. Cir. 1984) (internal quotation marks omitted).

A different rule applies when a mistrial is declared at the instance of the defendant:

> A defendant's motion for a mistrial constitutes "a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact." *United States v. Scott*, 437 U.S. 82, 93 (1978). ... Only where the governmental conduct in question is *intended to "goad"* the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.

*Kennedy*, 456 U.S. at 676 (emphasis added).

Because the mistrial in this case was declared upon McCallum's own motion, the district court applied the intent to goad standard announced in *Oregon v. Kennedy*. McCallum objects, however, that *Kennedy* "did not address a case ... where there was a second (hidden) layer of misconduct," referring here to the Government's failure to disclose the 17 complaints to the district court before his first trial. Being unaware of that misconduct, McCallum "could not have incorporated it into any 'deliberate election' to seek a mistrial." "In this situation," he argues, "the 'goading' standard just makes no sense: The [G]overnment cannot goad the defense into doing anything — let alone moving for a

mistrial — by engaging in misconduct the defense does not know about."

McCallum has identified a genuine puzzle. As a linguistic matter the word "goad" suggests action — the thrust of a stick, say, to drive a reluctant herd, or the taunts of a schoolyard bully to incite fisticuffs. A prosecutor's failure to meet his disclosure obligations, the nature of which is inaction and the existence of which is unknown, cannot goad a defendant into moving for a mistrial. If goading were essential, therefore, no disclosure violation by a prosecutor could ever trigger the bar of double jeopardy. Perhaps that is the rule and the remedy is not that the defendant go free but that the prosecutor be sanctioned. Rather than be led to that broad conclusion by making a talisman of a single word, however, we focus not upon the search for a "goad" but instead upon the Supreme Court's underlying concern, which is "the intent of the prosecutor." *Id.* at 675. When a prosecutor deliberately causes the defendant to move for a mistrial, presumably because he believes the odds of getting a conviction will be better if he can get a fresh start, his intent is to "subvert the protections afforded by the Double Jeopardy Clause." *Id.* at 676. Whether the prosecutor intends to obtain the mistrial by malfeasance or nonfeasance, action or inaction, is irrelevant.

Suppose a defendant moves for a mistrial on the ground that the jury has been tainted; meanwhile, the prosecutor has learned of exculpatory information that, if revealed, would cause the defendant to withdraw his motion and complete the trial, which is otherwise going well for the defendant; the prosecutor therefore decides to withhold the information with the express purpose of obtaining a mistrial. In this hypothetical case the defendant was not "goaded" by the prosecutor into seeking the mistrial but the prosecutor

nonetheless, by his knowing inaction, intentionally caused the mistrial to be declared in order to gain a strategic advantage. In such a case, double jeopardy surely bars a second trial because the prosecutor "intended to provoke the defendant into moving," or more precisely, adhering to his motion "for a mistrial." *Id.* at 679. That the prosecutor did not, strictly speaking, "goad" the defendant into seeking a mistrial is immaterial.

Even assuming, as we do, that a prosecutor's failure to meet his disclosure obligations bars retrial under the Double Jeopardy Clause if and only if the failure was intended to and did cause the defendant to move for and obtain a mistrial, the intent of the prosecutor is a question of fact to be decided by the district court in the first instance. *Id.* at 675. Here the district court specifically found "the prosecutor's conduct was neither intentional nor intended to provoke a mistrial." 885 F. Supp. 2d at 115. We would review that finding for clear error, *see Robinson v. Wade*, 686 F.2d 298, 309 (5th Cir. 1982) ("A finding that the Government's acts do not amount to intentional misconduct ... will not be set aside unless shown to have been clearly erroneous"); *cf. United States v. Meyer*, 810 F.2d 1242, 1244 (D.C. Cir. 1987) ("The clearly erroneous standard ordinarily governs review of a judge's findings in a criminal case on issues other than the defendant's guilt"), but the appellant here does not challenge it. Nor is the district court's finding that the prosecutor's conduct was unintentional infected by plain error. *See United States v. Rhodes*, 886 F.2d 375, 379 (D.C. Cir. 1989) ("[E]ven though an issue was not raised ... on appeal, the issue would not be deemed [forfeit] had it been 'a case of plain error in which we should reverse on our own motion'" (quoting *United States v. Greschner*, 802 F.2d 373, 380 (10th Cir. 1986))); *see also* FED. R. CRIM. P. 52(b).

10

### III. Conclusion

We do not condone the conduct of the prosecution in this case; far from it. The Government's dereliction of its duty to disclose information deprived the defendant of the opportunity to plan and to execute his trial strategy — which the Government can now more fully anticipate when the case is retried. Because the prosecutor's several violations were unintentional, however, retrial of McCallum is not barred by the Double Jeopardy Clause. The order of the district court denying the motion to dismiss the indictment is therefore

*Affirmed.*