Malcolm George **GREYSON,**
Petitioner–Appellant,

v.

John E. **KELLAM,** Acting Administrator, Oahu Community Correctional Center; Harold Falk, Director, Department of Corrections, State of Hawaii, Respondents–Appellees.

No. 90–16165.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 6, 1991.

Decided July 1, 1991.

---

Myles S. Breiner and Susan Barr, Honolulu, Hawaii, for petitioner-appellant.

Charlotte J. Duarte, Deputy Pros. Atty., Honolulu, Hawaii, for respondents-appellees.

Before SCHROEDER, FLETCHER and FERGUSON, Circuit Judges.

FERGUSON, Circuit Judge:

Petitioner-defendant Malcolm Greyson appeals the district court's dismissal of his habeas corpus petition. Greyson contends that double jeopardy, based on prosecutorial misconduct intended to goad the defendant into moving for a mistrial, bars his fourth trial for murder in state court.

## I.

Greyson is currently awaiting his fourth trial for the 1983 murder of his seven-month old son.[1] He alleges that double jeopardy bars his fourth trial because the prosecution at his third trial intentionally goaded him into requesting a mistrial.[2] The trial court denied the motion for mistrial and Greyson was convicted. The Hawaii Supreme Court later overturned his conviction on separate grounds but noted that the prosecution was guilty of overreaching. *State v. Greyson*, 70 Haw. 227, 768 P.2d 759, 762 n. 4 (1989).

Greyson's complaint relates to statements made by the prosecution before the jury in his third trial. During opening statements and questioning of the expert witness, the prosecution described Greyson's alleged practice of suffocating his son to stop him from crying. *Id.*, 768 P.2d at 760–61. The prosecution stated that these statements would be supported by the testimony of Greyson's wife Maria. Maria had so testified at Greyson's first trial, although she later recanted and did not testify at the second trial.

At the time of the third trial, Maria had returned to live with her family in Bolivia. The prosecution and Greyson disagreed as to whether Maria was planning to return to Hawaii to testify in the third trial. *Id.* Because the second trial ended in a mistrial due to a hung jury, Greyson contends that the prosecution was desperate to get Maria to testify at his third trial. Despite the prosecution's assurances that travel arrangements were being made, Maria never did arrive to testify. *Id.*

After the prosecution rested, Greyson moved for a mistrial based on the prosecution's references to the alleged suffocation because Maria had never testified. *Id.*, 768 P.2d at 761. The mistrial motion was denied on the grounds that it was untimely and that Greyson had not asked for a curative jury instruction. Subsequently, Greyson was convicted.

> But later at the hearing on the motion for release on bail pending appeal, [the prosecution] revealed that [the] State could not transport Maria to Hawaii because her attorney had refused to accompany her unless a $10,000 fee was paid. [The defense] argued that this surprise disclosure demonstrated [the] State never had a good faith belief about producing Maria for trial.

*Id.*, 768 P.2d at 761–62.

The Hawaii Supreme Court reversed Greyson's conviction based on the prosecution's use of a confidential presentence report prepared after his first trial to impeach his testimony at the third trial. While the court declined to rule on Greyson's allegation that the prosecution acted in bad faith regarding its use of the suffo-

---

1. The relevant facts surrounding the child's death are detailed in *State v. Greyson*, 70 Haw. 227, 768 P.2d 759 (1989), the Hawaii Supreme Court's opinion which reversed Greyson's conviction after his third trial and remanded the case for his current trial.

2. The history of the state's case against Greyson is set forth in the district court's order dismissing the habeas petition.

   Greyson's first trial resulted in a conviction. On appeal, the Hawaii Supreme Court vacated the conviction and remanded the case for a new trial on the basis that Greyson had been denied adequate opportunity to cross-examine

his wife who had testified as a witness for the prosecution.

   Greyson's second trial resulted in a mistrial because the jury's final vote being 11–1, in favor of conviction. [Greyson's wife did not testify at his second trial.]

   Greyson's third trial once again resulted in a conviction. On appeal, the Hawaii Supreme Court once again vacated Greyson's conviction and remanded the case for a new trial. Order Adopting Magistrate's January 29, 1990 Report and Recommendation that Petition Be Dismissed.

cation testimony, it expressed its opinion in a footnote:

> Here, the circumstances surrounding Maria's availability to testify are suspicious. Trial had begun, and [the prosecution] was still unable to obtain [Maria's] presence because of her family's opposition, her own reluctance to travel, plus the difficulties with her Bolivia attorney. [The prosecution's] late explanation about the $10,000 demanded fee, moreover, raises the strong inference that [the] State lacked a genuine good-faith belief that Maria would take the stand. [The prosecution's] overzealousness to convict Greyson by the questionable use of the suffocation incidents, although Maria was likely not going to testify, was not *de minimis*. We condemn such overreaching but do not determine if this conduct amounted to reversible error.

*Id.*, 768 P.2d at 762 n. 4 (citations omitted).

After the reversal of his conviction, Greyson moved to have his indictment dismissed by the trial court on double jeopardy grounds. He relied on the language in the supreme court's footnote that the prosecution had acted in bad faith during his third trial. He alleged that the prosecution's conduct had been intended to goad him into moving for a mistrial and, therefore, although his mistrial motion was denied, his fourth trial was barred by double jeopardy. The trial court denied the motion.

Greyson then filed a petition for writ of habeas corpus alleging the same grounds, which was assigned to another state trial judge. The court denied the petition, concluding that Greyson was relitigating the issues presented in his motion to dismiss the indictment and, further, that there was no evidence of intentional misconduct on the part of the prosecutor.

Finally, Greyson filed a petition for a writ with the Hawaii Supreme Court. Presenting the same double jeopardy argument, he asked the supreme court to order the trial judge to dismiss the indictment.

The supreme court summarily denied the petition without prejudice.

In January 1990, Greyson filed a *pro se* petition for writ of habeas corpus in the federal district court. Shortly thereafter, the magistrate filed a report recommending that the petition be dismissed for failure to exhaust state court remedies. The district court ordered the state to show cause why the petition should not be granted. After receipt of the state's response, the district court issued an order dismissing the petition. While it found that Greyson was not required to exhaust his state court remedies due to his double jeopardy allegation, the court ruled that his petition must fail because 1) his mistrial motion during his third trial was unsuccessful and 2) a state trial court had found that the prosecutor did not act in bad faith.[3]

Greyson timely appeals and counsel has been appointed.

## II.

▮ We review the district court's decision whether to grant or deny a petition for habeas corpus de novo. *Norris v. Risley*, 878 F.2d 1178, 1180 (9th Cir.1989). The decision to deny an evidentiary hearing is reviewed for abuse of discretion. *Watts v. United States*, 841 F.2d 275, 277 (9th Cir.1988). "A habeas corpus petitioner is entitled to an evidentiary hearing if he has alleged facts which, if proven, would entitle him to relief and he did not receive a full and fair evidentiary hearing in a state court." *Norris*, 878 F.2d at 1180.

## III.

▮ The district court found that Greyson's habeas petition was not barred by failure to exhaust state court remedies because he alleged a violation of his constitutional right to protection against double jeopardy if his fourth trial were allowed to proceed. We have held that "in the case of a double jeopardy claim the exhaustion requirement may be satisfied before a final judgment was rendered in a State court."

---

**3.** Greyson has also filed numerous petitions demanding his immediate release. These petitions have been denied by both the district court and this court.

*Hartley v. Neely*, 701 F.2d 780, 781 (9th Cir.1983). However, the petitioner must have exhausted those state remedies available to him or her before bringing a petition for habeas corpus in federal court. *Id.*

■ Here, Greyson sought dismissal of the indictment in the Hawaii trial court and was denied. He then sought an order allowing interlocutory appeal of that decision, which was likewise denied by the trial court. At the same time, Greyson petitioned the Hawaii Supreme Court for writ of habeas corpus. The court declined jurisdiction over the writ. He then filed a habeas corpus petition in the state trial court, which was heard by a different judge than the one scheduled to preside over his upcoming trial. This judge found that Greyson was trying to relitigate the same issues contained in his motion for dismissal and denied the petition. Finally, the supreme court refused to issue a writ ordering the trial court to dismiss the indictment.

Because Greyson has exhausted the state's available remedies, we find that the district court correctly held that Greyson's petition was not barred by failure to exhaust state remedies.

## IV.

■ The Double Jeopardy Clause provides criminal defendants the right to have their case heard and a verdict returned by the jury originally impaneled. *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). "This right is not absolute, however, and must at times be subordinated to society's interest in just determinations of guilt or innocence." *United States v. Bates*, 917 F.2d 388, 392 (9th Cir.1990) (citing *Wade v. Hunter*, 336 U.S. at 689, 69 S.Ct. at 837). Generally, a defendant may be retried after his conviction is vacated for error. However, the double jeopardy bar applies when the conviction is vacated on the grounds of insufficient evidence. *Burks v. United States*, 437 U.S. 1, 18, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978).

The Supreme Court has also held that retrial is barred when the defendant moves for and is granted a mistrial on the basis of deliberate prosecutorial misconduct intended to provoke a mistrial motion by the defense. *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). The Supreme Court in *Kennedy* stated:

> [T]he circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the *successful* motion for a mistrial was intended to provoke the defendant into moving for a mistrial.

*Id.* at 679, 102 S.Ct. at 2091 (emphasis added). "To permit retrial in such a circumstance offends the interests supporting the double jeopardy bar because the misconduct compelled the defendant to forego his right to a fair trial leading to verdict before the first tribunal." *United States v. Singer*, 785 F.2d 228, 238 (8th Cir.), *cert. denied*, 479 U.S. 883, 107 S.Ct. 273, 93 L.Ed.2d 249 (1986).

■ The Court's decision in *Kennedy* rested on its assertion that the Double Jeopardy Clause protected the defendant's right to control whether the trial would be completed. *Kennedy*, 456 U.S. at 673, 102 S.Ct. at 2088. Because a defendant's mistrial motion generally would not bar retrial, the Court emphasized that only when the prosecutorial misconduct was committed with the intent to force the defendant into giving up his or her right to continue with the trial would double jeopardy apply. *Kennedy*, 456 U.S. at 675–76, 102 S.Ct. at 2089.

In cases where the prosecution wants to force a mistrial, we presume that the prosecution is unprepared or is unhappy with the trial's progress and wants another opportunity to retry the defendant. Here, Greyson asserts that the prosecution was afraid that without Maria's testimony, he would be acquitted. Thus, he alleges, the prosecution made the prejudicial statements intentionally to force Greyson to move for a mistrial. He asks this court to extend the rule in *Kennedy* and halt his fourth trial. He contends that the reasoning underlying *Kennedy* also applies when a defendant's mistrial motion was wrongly denied.

Several courts have considered the proposition presented by Greyson, i.e., that *Kennedy* should also apply when an appellate court finds that the defendant's mistrial motion, based on prosecutorial or judicial misconduct intended to provoke the motion, was wrongly denied by the trial court. *See United States v. Singer*, 785 F.2d at 238–40; *United States v. Head*, 697 F.2d 1200, 1206 n. 10 (4th Cir.1982), *cert. denied*, 462 U.S. 1132, 103 S.Ct. 3113, 77 L.Ed.2d 1367 (1983); *Robinson v. Wade*, 686 F.2d 298, 306–09 (5th Cir.1982); *United States v. Curtis*, 683 F.2d 769, 772–76 (3d Cir.), *cert. denied*, 459 U.S. 1018, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982); *United States v. Singleterry*, 683 F.2d 122, 123–24 (5th Cir.), *cert. denied*, 459 U.S. 1021, 103 S.Ct. 387, 74 L.Ed.2d 518 (1982); *United States ex rel. Beringer v. O'Grady*, 737 F.Supp. 478 (N.D.Ill.1990). *See also, United States v. Roberts*, 640 F.2d 225, 227–28, 230–31 (9th Cir.) (Norris, J., dissenting), *cert. denied*, 452 U.S. 942, 101 S.Ct. 3088, 69 L.Ed.2d 957 (1981). These courts have considered potentially compelling reasons why the double jeopardy bar against retrial should apply in a case in which the defendant's mistrial motion was found to be wrongly denied. However, no court has yet found that the facts before it demanded such a result,[4] and therefore no court has resolved the question.

The courts that have considered this issue have usually found the question "a complicated and close" one. *Singer*, 785 F.2d at 240 (citing *Curtis*, 683 F.2d at 772). As the Eighth Circuit stated:

There is good reason to argue that a criminal defendant whose conviction over a timely motion for mistrial is reversed because of any sort of governmental misconduct should be placed on equal footing with a defendant whose motion properly is granted. The defendant obtains mistrial only if the trial judge apprehends the sufficiently prejudicial misconduct. In reversing, the appellate court simply corrects the trial court's error. The right of a criminal defendant not to be twice placed in jeopardy should not hang on which court correctly determines that misconduct infected the trial.

*Singer*, 785 F.2d at 239 (citing *Robinson v. Wade*, 686 F.2d at 307–08; *Curtis*, 683 F.2d at 774). However, these courts have also noted the Supreme Court's consistent rulings that only a reversal for insufficiency of the evidence will bar retrial. *See, e.g., Singer*, 785 F.2d at 239; *Curtis*, 683 F.2d at 773.

Most courts have found that given the right case, *Kennedy* might apply to bar the retrial of a defendant who unsuccessfully moves for a mistrial. However, the Fifth Circuit reasoned that the rationale underlying the Court's rule in *Kennedy* did not support the application of double jeopardy to cases where the defendant's mistrial motion was unsuccessful, even if the prosecution did intend to provoke it. *Singleterry*, 683 F.2d at 124. Specifically, the court found that when a mistrial motion is denied, the concerns expressed by the *Kennedy* court are not as relevant. When the mistrial motion is unsuccessful, the prosecution's intent to "seek[ ] a more favorable

---

**4.** The *Singer* court found that while the trial judge's misconduct was sufficient to require reversal, there was no evidence of actual bias. *Singer*, 785 F.2d at 240. Similarly, the Third Circuit in *Curtis* considered the same argument presented by Greyson here and found that even if double jeopardy could apply in such a case, Curtis had presented no evidence of prosecutorial intent. *Curtis*, 683 F.2d at 776–78. In *Robinson*, the court did not resolve the issue because the district court had found no intent on the part of the prosecution and this finding was not clearly erroneous. *Robinson*, 686 F.2d at 309.

The court in *Head* based its ruling on its finding that no mistrial motion was ever made and that the charge of prosecutorial misconduct

was not raised until after the appeals court reversed on other grounds. *Head*, 697 F.2d at 1206. The *Singleterry* court expressed disfavor towards an extension of the *Kennedy* rule, but found it did not need to decide the question because there was no evidence of intent to cause a mistrial. *Singleterry*, 683 F.2d at 124.

Finally, in *Beringer*, the district court adopted the proposition that a mistrial motion need not be originally successful to be covered by the rule in *Kennedy*. *Beringer*, 737 F.Supp. at 486. However, it found that the defendant had failed to move for a mistrial on these grounds during the trial and the trial court did not grant one *sua sponte*, thus there was no evidence to support a finding of intent. *Id.* at 486.

opportunity to convict" does not pose the same danger and "the defendant has not lost his chance for an acquittal by the first jury." *Id.*

We need not resolve here the issue which our sister circuits have carefully deliberated. We reach the same conclusion that they did, i.e., even if the *Kennedy* rule may be extended, this case does not require it. Greyson's conviction was not vacated for the reasons underlying his mistrial motion. While the supreme court did find that prosecutorial overreaching had occurred, it failed to reverse on this ground and specifically did not find that the prosecution had intended to force the defense into moving for a mistrial. Rather, as the supreme court found, the prosecution simply appeared overzealous in its desire to convict Greyson.

The Supreme Court has told us that the issue of intent in these cases is a finding of fact. *Kennedy,* 456 U.S. at 675, 102 S.Ct. at 2089. The state trial court which ruled on Greyson's state habeas petition found, after a hearing, that there was no evidence in the record of intentional misconduct on the part of the prosecution. Because Greyson has not shown that this finding is unsupported by the record, we must defer to the state court. Without any evidence of intent on the part of the prosecution to provoke a mistrial motion, we are not required to decide whether the rule in *Kennedy* may also apply to defendants whose mistrial motions are wrongly denied.

## V.

■ "In habeas proceedings under 28 U.S.C. § 2254, an evidentiary hearing is required when: (1) the petitioner's allegations, if proved, would establish the right to relief (prima facie case); and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts." *Van Pilon v. Reed,* 799 F.2d 1332, 1338 (9th Cir.1986) (citing *Townsend v. Sain,* 372 U.S. 293, 312–13, 83 S.Ct. 745, 756–57, 9 L.Ed.2d 770 (1963)); *Bashor v. Risley,* 730 F.2d 1228, 1232 (9th Cir.), *cert. denied,* 469 U.S. 838, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984)). Even assuming that

Greyson's allegations, if true, establish a prima facie case for habeas relief, the district court was correct in denying Greyson's petition without a hearing. The district court relied on the state court's finding, after a hearing, that the prosecution did not intend to goad Greyson into moving for a mistrial during his third trial. Because Greyson has not met his burden of showing that this conclusion was not well-supported by the record, he is not entitled to an evidentiary hearing.

We AFFIRM the district court's denial of Greyson's habeas corpus petition.