15 F.3d 1083
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Alex BONILLA, Petitioner-Appellant,
v.
Eddie YLST, et. al., Respondent-Appellee.
 No. 92-55501.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 3, 1993.
Decided Feb. 3, 1994.
 
 Before: Fletcher, Pregerson, and Norris, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 California state prisoner Alex Bonilla appeals the district court's denial of his 28 U.S.C. Sec. 2254 habeas corpus petition, which challenges his conviction for rape, attempted rape, and forcible oral copulation. We have jurisdiction over the appeal under 28 U.S.C. Sec. 2253. We affirm.
 
 BACKGROUND
 
 3
 Appellant Alex Bonilla is currently serving a 21-year sentence after he was convicted in state court of one count of rape, two counts of attempted rape, and five counts of forcible oral copulation in concert.
 
 
 4
 Before Bonilla's trial, approximately five weeks after the rape, the victim Dawn Weeks ("Weeks") was shown a photospread. The detective read her an admonition that she understood and initialed, stating that the group of photographs may or may not contain a picture of the person who committed the crime. (RT 400-01). Weeks commented that the hair of a man other than Bonilla "look[s] most like the person." (RT 403). She said that she was not sure if this man was her assailant. (RT 404). The detective then asked her to focus on the unchangeable features of the faces, not the hair. (RT 404). Weeks selected Bonilla, but said that she was not 100% sure. (RT 404-05).
 
 
 5
 Because the photospread produced only a tentative identification, the District Attorney sought and obtained an ex parte order for Bonilla to participate in a live lineup. The lineup occurred six weeks after the photospread, before the information was filed, and after the criminal complaint was filed.
 
 
 6
 Bonilla's counsel did not attend the lineup, even though the prosecutor had provided counsel with at least 10 or 11 days notice. (RT 240). Bonilla's counsel acknowledged that he received notice of the date and time of the lineup. (RT 243). He was at a preliminary hearing on another case at the scheduled time. (RT 243). When Bonilla's counsel did not appear at the lineup, the prosecutor called counsel's office to locate him, but nobody knew his whereabouts. The prosecutor told the sheriff's department to wait approximately 30 minutes and then to request a waiver of counsel from Bonilla. (RT 240-41).
 
 
 7
 Bonilla signed a waiver of his right to counsel. The waiver was written in English, but Deputy Alex Fernandez translated it into Spanish for Bonilla. Before requesting Bonilla's signature, Deputy Fernandez specifically asked Bonilla whether he gave up his right to have his attorney present at the lineup. (RT 251). Deputy Fernandez speaks Spanish fluently and is a Spanish interpreter at the county jail.
 
 
 8
 At the lineup, Weeks identified Bonilla. She was 100% positive that he was one of her assailants. (CT 37). Bonilla's counsel never sought discovery on the circumstances or result of the lineup. Because counsel was not present when Bonilla signed the waiver-of-counsel document, the trial court found the waiver invalid, and thus, excluded all evidence of the lineup. (CT 81).
 
 
 9
 At trial, Weeks again identified Bonilla as the assailant. (CT 34; RT 267-68). The court permitted the jury to receive the identification evidence after it held an admissibility hearing pursuant to California Evidence Code Sec. 402, in response to a motion to suppress made by Bonilla's counsel. (CT 80; RT 356-60). Weeks testified that she was "pretty sure" that she would have had no difficulty positively identifying Bonilla at the preliminary hearing or at trial if she had not seen him in the lineup. (RT 359). She thought that she could have identified him absent the lineup, because by the time of the lineup, "the image was already there." (RT 358-59). She further stated that her memory of Bonilla from the lineup did not increase or decrease her ability to identify Bonilla at trial. (RT 360). Based on the hearing testimony, the court permitted the identification evidence.[1]
 
 
 10
 The jury convicted Bonilla, and Bonilla, represented by a new attorney, appealed to the California Court of Appeal. The court noted the trial court's findings that Weeks had a clear view of Bonilla throughout the attack, that the area was well lit, that her glasses were dislodged only momentarily, that she had no trouble seeing Bonilla's face, and that she never saw his foreskin or distinctive teeth. Also, the court found that Weeks' identification of Bonilla was not tainted by unduly suggestive procedures. Bonilla's counsel on appeal never challenged the propriety of either the live lineup without counsel or the trial counsel's failure to attend the lineup or to object to its procedures. The court affirmed Bonilla's conviction.
 
 
 11
 After losing on appeal, Bonilla filed a petition for a writ of habeas corpus from the California Supreme Court, which was denied. Finally, Bonilla petitioned for federal habeas corpus. The district court denied the petition and dismissed the action with prejudice, based on the Report and Recommendations of the magistrate judge. Bonilla appeals.
 
 ANALYSIS
 
 12
 We review de novo the decision whether to grant or deny a petition for habeas corpus. Thomas v. Brewer, 923 F.2d 1361, 1364 (9th Cir.1991). " 'To the extent it is necessary to review findings of fact, the clearly erroneous standard applies.' " Id. (citations omitted).
 
 
 13
 The standard that the district court must apply, and that we now apply, to determine whether habeas relief should be granted in any given case, is whether the alleged errors " 'had substantial and injurious effect or influence in determining the jury verdict.' " Brecht v. Abrahamson, 113 S.Ct. 1710, 1716 (1993) (citations to quoted case omitted). To apply this standard, the reviewing court must "make a de novo examination of the trial record." Id. at 1724. The court must decide that any error that occurred at trial " 'did not influence the jury' " and that " 'the judgment was not substantially swayed by the error.' " Id. (citations to quoted case omitted).
 
 
 14
 1. 14th Amendment Due Process and In-Court Identification
 
 
 15
 We review the admission of an in-court identification for an abuse of discretion. United States v. Gregory, 891 F.2d 732, 734 (9th Cir.1989) (citations omitted). If an out-of-court identification is inadmissible due to unconstitutionality, an in-court identification is inadmissible unless the government establishes "by clear and convincing evidence that the in-court [identification is] based upon observations of the suspect other than the lineup identification." United States v. Wade, 388 U.S. 218, 240 (1967) (uncounselled, pretrial lineup, in violation of the 6th Amendment). To satisfy this burden of proof, the government must show that the in-court identification is the product of recollection that is independent of the taint of the prior, unconstitutional identification. Id. (adopting the test in Wong Sun v. United States, 371 U.S. 471 (1963)). "It is the likelihood of misidentification which violates a defendant's right to due process"; courts must determine whether there is a very substantial likelihood of misidentification. Neil v. Biggers, 409 U.S. 188, 199 (1972) (admissibility of a suggestive out-of-court identification depends on its reliability under the totality of the circumstances).
 
 
 16
 In this case, after holding an evidentiary hearing, the trial court found that Week's ability to identify Bonilla was independent of her prior out-of-court identifications. This finding of fact is "presumed to be correct," 28 U.S.C. Sec. 2254(d), and we hold that the finding is fairly supported by the record. See Nevius v. Sumner, 852 F.2d 463, 469 (9th Cir.1988).
 
 
 17
 2. 6th Amendment Effective Assistance of Counsel
 
 
 18
 Whether a defendant received ineffective assistance of counsel, in violation of the Sixth Amendment, is a question of law, reviewed de novo. United States v. Swanson, 943 F.2d 1070, 1072 (9th Cir.1991) (citations omitted). A defendant claiming ineffective assistance of counsel must demonstrate (1) that counsel's actions were "outside the wide range of professionally competent assistance," and (2) that the defendant was prejudiced by counsel's actions. Strickland v. Washington, 466 U.S. 668, 687-90 (1984). The district court's findings of fact are reviewed under the clearly erroneous standard. United States v. Garcia, 997 F.2d 1273, 1283 (9th Cir.1993). Whether the facts suffice to establish the " 'performance and prejudice components of the ineffectiveness inquiry' " is a question reviewed de novo. United States v. Layton, 855 F.2d 1388, 1416 (9th Cir.1988), cert. denied, 489 U.S. 1046 (1989) (citations omitted).
 
 A. Representation by Trial Counsel
 
 19
 For Bonilla's ineffective assistance claim, he asks us to consider the facts that his attorney failed to appear at the live lineup, failed to send anyone to cover for him, obtained no discovery on the lineup procedures, motioned to exclude the in-court identification only after it was made, and failed to challenge the lineup in his notice of appeal.[2] As proof of prejudice, Bonilla contends the following: (1) because his attorney knew nothing about the lineup procedures, Bonilla lost the opportunity to cross-examine Weeks effectively and to reconstruct the lineup; (2) also due to his attorney's ignorance on the lineup, the magistrate rejected counsel's allegation of undue suggestivity for lack of factual support.
 
 
 20
 Under Strickland, we recognize the stringency of the performance and prejudice prongs. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 691. To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." Id. at 695.
 
 
 21
 Guided by these principles, we affirm the finding that Bonilla's conviction was not tainted by ineffective counsel assistance. Because the trial court excluded the out-of-court identification, Bonilla was not prejudiced by his counsel's inadequate performance, if any.
 
 B. Representation By Appellate Counsel
 
 22
 As to his appellate counsel, Bonilla bases his ineffective assistance claim on his counsel's failure to challenge the propriety of the photospread and live lineup and to allege ineffective representation by trial counsel. Bonilla's appellate counsel challenged only the sufficiency of the evidence and sentencing. Because we have found that Bonilla's trial counsel did not provide ineffective assistance, and because the out-of-court identifications were excluded, we reject Bonilla's claim.
 
 
 23
 3. District Court's Denial of Bonilla's Request For An Evidentiary Hearing
 
 
 24
 At the very least, Bonilla requests that we remand this case to the district court for an evidentiary hearing on the propriety of the live lineup and his counsel's assistance. Bonilla urges that his counsel should be able to review, and the district court should be able to consider, the District Attorney's evidence. In particular, Bonilla seeks access to the lineup photographs, videotape, and any other physical, documentary or other evidence to help reconstruct and assess the propriety of the uncounselled lineup, as well as any additional facts to explain his trial attorney's absence from the lineup.
 
 
 25
 " 'A habeas corpus petitioner is entitled to an evidentiary hearing if he has alleged facts which, if proven, would entitle him to relief and he did not receive a full and fair evidentiary hearing in a state court.' " Greyson v. Kellam, 937 F.2d 1409, 1412 (9th Cir.1991) (citation to quoted case omitted). We review the district court's denial of an evidentiary hearing for an abuse of discretion. Id. at 1412.
 
 
 26
 We deny Bonilla's request for an evidentiary hearing for the same reasons that we reject his ineffective counsel assistance claims: Because the out-of-court identifications were excluded from evidence, an evidentiary hearing on the surrounding circumstances of those identifications was unnecessary. As indicated above, we also note that the trial court, after holding an evidentiary hearing, found that Week's ability to identify Bonilla was independent of her prior out-of-court identifications.
 
 
 27
 AFFIRMED.
 
 FLETCHER, Judge, dissenting:
 
 28
 I would reverse the district court's denial of an evidentiary hearing. Because there was no physical evidence against Bonilla, Dawn Week's in-court identification of him was indispensable to his conviction. After an inconclusive identification of Bonilla's picture in a photo spread, based on a suggestive procedure, Weeks, we are told, positively identified Bonilla in a lineup at which defense counsel was not present. The district court had before it, and we have before us, no record of what took place at the lineup. It has been suggested, but not made a part of the record, that Bonilla was the only person from the photo spread in the lineup. Without such evidence, any determination that Weeks' in-court identification was untainted by the lineup lacked foundation and was premature.
 
 
 29
 This persuades me that in this case "the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing," 28 U.S.C. Sec. 2254(d)(2). I would accord Bonilla an evidentiary hearing in the district court. Norris v. Risley, 878 F.2d 1178, 1180 (9th Cir.1989); see Townsend v. Sain, 372 U.S. 293 (1963), overruled in part by Keeney v. Tamayo-Reyes, 112 S.Ct. 1715 (1992). The district court, in my view, abused its discretion in not holding an evidentiary hearing. Greyson v. Kellam, 937 F.2d 1409, 1412 (9th Cir.1991) (denial of evidentiary hearing reviewed for abuse of discretion).
 
 
 30
 If a pretrial lineup procedure is impermissibly suggestive, a subsequent in-court identification is admissible only if the government can show it to be independent of the "taint" of the pretrial procedure. United States v. Wade, 388 U.S. 218, 241 (1967). The identification must be evaluated with an eye to subjective and objective indicia of reliability, id.; see Neil v. Biggers, 409 U.S. 188, 199-200 (1972), and then balanced against the suggestiveness of the pretrial identification procedures (here, the lineup in conjunction with the previous photo spread).
 
 
 31
 Although the trial court conducted a hearing on the subjective and objective factors relevant to the reliability of Weeks' in-court identification, it had no evidence whatsoever concerning what took place at the lineup. Weeks told the court she was "pretty sure" her in-court identification of Bonilla was independent of the pretrial lineup. Such an assertion is a factor to be weighed against the suggestiveness of a lineup; it does not automatically cure it. For this reason I am unable to presume correct the trial court's finding that Weeks' identification of Bonilla was reliable. See Rhoden v. Rowland, 10 F3d 1457, 1460 (9th Cir. Nov. 29, 1993) (holding that "[t]he state court finding on which the district court relied was not entitled to a presumption of correctness because the material facts on which it was predicated were not adequately developed;" remanding for evidentiary hearing in the district court).
 
 
 32
 Because the trial court failed to determine whether the lineup was suggestive, its hearing can be considered full and fair only if there is no conceivable way that the lineup might have tainted Weeks' in-court identification. Given the infirmities of the photo spread procedures, a sufficiently suggestive lineup would call the in-court identification into serious question. This would be the case, as has been suggested, if Bonilla were the only person at the lineup who had also been in the photo spread, or if he were the only person of his general appearance or ethnicity, or if police coaching or signalling occurred at the lineup. See Wade, 388 U.S. at 233 (examples of unduly suggestive lineup practices). If Bonilla could prove that any of these scenarios took place, he would have a strong claim under Wade and Neil.
 
 
 33
 Aided by competent counsel, Bonilla could develop the information relevant to such a claim by questioning the police present at the lineup, the prosecutor, and Weeks. He is entitled to the chance to do so. When the inquiry goes to innocence or guilt, the presumptions should be all in favor of ordering an evidentiary hearing.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 There were a few discrepancies between Bonilla's characteristics and Weeks' identification testimony. Within 15 minutes of the attack, Weeks described her assailants to investigating officers, as very thin, but Bonilla is not thin. (RT 484-85). At trial, she said that the assailant's penis was uncircumcised, but Bonilla is circumcised. (RT 487-88). However, she did not understand the term "circumcised", the assailant's penis was erect most of the time, he held it near the end while masturbating, and she could not see it while it was in her mouth and vagina. (RT 369; 372; 376). Also, she never noticed that her assailant had distinctive, dark and broken teeth, which is true of Bonilla. (RT 376; 486). Finally, Bonilla's blood type and pubic hairs do not match the blood and hairs found on Weeks' body after the attack, but experts testified that the tests do not show whether or not Bonilla was one of the assailants. (RT 423-24; 427-30). No other Hispanic males were in the courtroom, (RT 380-81), and Bonilla was sitting next to an attorney, (RT 364)
 
 
 [2]
 We do not entertain Bonilla's claim that his counsel's failure to challenge the lineup in the notice of appeal constituted ineffective assistance. Bonilla did not assert this claim in his habeas corpus petition to the district court and cannot raise it for the first time on appeal. Willard v. California, 812 F.2d 461, 465 (9th Cir.1987) (habeas case)